# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| UNITED STATES | CRIMINAL ACTION |
|---|---|
| VERSUS | NO: 10-028 |
| QUENTIN McCLURE | SECTION: "C" (3) |

## ORDER & REASONS[1]

Before the Court is a Motion to Quash, filed by the Assistant United States Attorney, requesting that this Court quash the subpoena *duces tecum* issued by defendant, Quentin McClure, on the Public Integrity Bureau (hereinafter "PIB") of the New Orleans Police Department ("NOPD"). The subpoena, served May 10, 2010, was issued pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure. For the following reasons, the motion is DENIED without prejudice.

## I. BACKGROUND

Defendant Quentin McClure is currently under indictment for allegedly violating 18 U.S.C.§ 922(g)(1), for being a felon in possession of a firearm. The indictment stems from events allegedly occurring on October 13, 2009, where three NOPD Officers witnessed defendant "toss a firearm from his vehicle." *Id.* Defendant was later arrested near his home in Bridge City and indicted on January 29, 2010.

Three months later, defense counsel issued a subpoena to Captain John Thomas, requesting

---

[1] Brett J. Peifer, a graduate of Loyola University College of Law, assisted in the preparation of this opinion.

the following information from the NOPD's Public Integrity Bureau:

> "Copies of any and all records of complaints including, but not limited to, the disposition of same and/or public integrity matters regarding New Orleans Police Officers John M. Castelin, Jr., Badge No. 2141, Jim Cunningham, Badge No. 487, and Eddie Branch, Badge No. 837."

The government responded on August 10, 2010 by filing a Motion to Quash Defendant's subpoena. Rec. Doc. 22. On August 26, 2010, the defendant filed an opposition to the government's motion arguing that the government lacks standing to challenge the subpoena because it was directed at a non-party witness and not at the government. Rec. Doc. 25. Defendant further argues that, because the documents sought are limited to the credibility and truthfulness of the government's witnesses, an *in camera* inspection is appropriate to evaluate adherence to the requirements of Rule 17(c) and related federal caselaw. *Id.* Trial is set for September 7, 2010.

## II. <u>LAW & ANALYSIS</u>

The issue in this case is nearly identical to that presented in *United States. v. Williams*, F. Supp. 2d, 2007 WL 2287819 (E.D. La.)(J. Feldman). The primary argument raised by the defendant here and there regards the Government's lack of standing to challenge the subpoena. Alternatively, if the government has standing, the defendant argues that the documents satisfy the requirements of Rule 17(c) of the Federal Rules of Criminal Procedure and related caselaw. In ruling on this motion, this Court adopts the reasoning and result of Judge Feldman in the *Williams* case.

**A)** **Rule 17(c)(2) of the Federal Rules of Criminal Procedure**

Rule 17(c)(2) states that, "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P.. 17(c)(2).

2

In 1974, the United States Supreme Court held that compliance with a subpoena will not be unreasonable or oppressive where the documents requested are (1) relevant, (2) admissible, and (3) requested with adequate specificity. *United States v. Nixon*, 418 U.S. 683, 700 (1974). Because the prosecution's case revolves almost entirely around the testimony of the three police officers, information pertaining to their credibility is certainly relevant.

The second element, admissibility, must be examined under Federal Rule of Evidence 608(b). This rule provides that

> "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. Fed. R. Evid. 608(b)

Thus, to the degree that the subpoena requests information concerning the credibility of the officers, it is admissible under Rule 608(b).

The third element, specificity, seems to require an absence of undue cost, burden, or delay associated with excessively broad requests. As Defendant states in opposition to the motion to quash, "the subpoena is sufficiently specific because it requests a discrete set of records, on a limited topic, pertaining to particular officers." Rec. Doc. 25, p. 5. This request appears adequately specific to prevent any undue burden or delay associated with vague or excessively broad subpoena requests.

The subpoenaed documents at issue satisfy all three elements but only to the degree that they are probative of the truthfulness or untruthfulness of the officers. To the extent that the requested information does not relate to the credibility of the officers, the subpoena drifts in the direction of

3

an impermissible "fishing expedition." Thus, an *in camera* evaluation would be appropriate to filter out information not probative of truthfulness and to assure compliance with federal judicial interpretation of Rule 17(c).

The United States Supreme Court applied a four-prong test, in the *Nixon* case, to determine whether to require pre-trial production of documents.

> Under this test, in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevent; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.' 418 U.S. 683, 700-701.

As previously discussed, the documents are evidentiary and relevant because the Government's case turns almost entirely on the testimony and credibility of its witnesses. Defendant has no reasonable means for obtaining these documents but through subpoena to the NOPD. The Defendant will not be able to properly prepare for impeachment of testifying witnesses without the requested information. Finally, the limited and specific nature of subpoena, pertaining only to the professional information of the officers, does not appear to be an impermissible "fishing expedition" into the personal lives of the police officers.

**B)** **Government standing to challenge non-party subpoena**

"Party has standing to move to quash subpoena addressed to another if subpoena infringes on movant's legitimate interest." *United States. v. Raineri*, 670 F.2d 702, (7th Cir. 1982). "The prosecution's legitimate interests in quashing include preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on the witness's credibility." *United States v. Segal*, 276 F. Supp. 2d 896, 900 (N.D. Ill. 2003). Here, the prosecution has made no

showing that compliance with the subpoena would result in undue delay, harassment, or prejudicial over-emphasis on witness credibility. However, an argument for the third element seems feasible since the only apparent purpose of such a subpoena would be to attack witness credibility.

The subpoena at issue here requests documents not in the control of the federal government, and the prosecution has failed to demonstrate that it infringes in any way on legitimate interests of the government. Thus, the prosecution lacks standing to move to quash the subpoena.

### a) Government standing by way of law enforcement privilege

The government cites two cases that it argues support a law enforcement privilege protecting the officers from disclosure of the PIB information. Rec. Doc. 22, p.4. In support, it cites *Orena*, which found a privilege where subpoenas sought information that "would reveal the names or addresses of the law enforcement officers, identify undercover surveillance vehicles, or disclose law enforcement techniques and procedures." 883 F. Supp. at 868.

Defendant cites the *Williams* case again, where Judge Feldman "distinguished *Orena*, noting that the PIB files requested involved 'no confidential information regarding the identities of officers or their law enforcement techniques.'" Rec. Doc. 25, p. 4, citing *Williams*, 2007 WL 2287819 at *2. The law enforcement privilege is implicated only where a subpoena seeks "confidential" information. Because the subpoena here seeks only records of complaints and public integrity matters relating to the officers, which this Court has specifically held do not constitute "confidential" information, the law enforcement privilege does not arise and provides no means for preventing disclosure of the PIB files.

### b) Government standing by way of its representation of recipients of subpoena

The Court specifically noted that the subpoenaed PIB files were in the custody of New Orleans and not the federal government. As a result of this distinction, Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure provides the only means for challenging such a subpoena. This rule "directs the recipient of the subpoena to send a letter of objection to the party serving the subpoena within fourteen days after service. The party serving the subpoena may then move the Court to compel the return of the subpoena." *Id.*

A review of case law on this subject reveals that courts have routinely found that the Government does not have the ability to stand in another's shoes and move to quash a subpoena. *U.S. v. Nachamie*, 91 F.Supp. 2d. 552, 560 (S.D.N.Y. 2000). "The Government cannot undertake to act as counsel to its witnesses." *Id.*

### c) Subpoena potential violation of *Brady*, *Giglio*, or Jencks Act

The government also cites a case where the court held that a "Rule 17(c) subpoena was improper when it requested production of materials where disclosure was limited by Rule 16, the Brady doctrine and the Jencks Act." *United States v. Beckford*, 964 F. Supp. 1010, 1031 (E.D. Va. 1977). Defendant again cites *Williams* for the proposition that "*Brady*, Jencks and *Giglio* disclosure obligations concern only material 'in the possession of the Government.'" As stated earlier, the requested documents are in the custody of the City of New Orleans and presumably not the federal government.

## III. CONCLUSION

Accordingly,

IT IS ORDERED that the motion to quash the subpoena *duces tecum* filed by the United States is DENIED without prejudice. Rec. Doc. 22. The subject files will be produced to the

6

chambers of the undersigned by **September 2, 2010, at noon**, for *in camera* review to determine adherence to Rule 17( c) and relevant federal caselaw.

New Orleans, Louisiana, this 1st day of September, 2010.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE